**In re Robert Scott MANNIX, Debtor.**

**Diane M. Mannix, Plaintiff,**

v.

**Robert Scott Mannix, Defendant.**

**Bankruptcy No. 5–00–03694.**
**Adversary No. 5–00–00243A.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Aug. 1, 2003.

George Clark, Esq., for Plaintiff.

Mark Conway, Esq., for Debtor/Defendant.

## OPINION [1]

JOHN J. THOMAS, Chief Judge.

### FACTUAL BACKGROUND

Plaintiff, Diane Mannix, and Debtor, Robert Mannix, were formerly husband and wife. The marriage produced two children which were 16 and 13 years old at the time of this trial. During the marriage, Debtor was involved in a property management and rental company, Northeast Real Estate Associates ("NERA"), that began to adversely affect the household's finances. In April 1992, in anticipation of separation, Debtor, without the benefit of counsel, created a detailed sixteen page postnuptial agreement ("Agreement"), which sought to equally divide the marital assets and expenses. The agreement resulted in Plaintiff buying-out Debtor's interest in the marital residence and relinquishing her interest in NERA and its assets to Debtor.[2] Plaintiff was allowed to keep her various savings and investment accounts pursuant to the Agreement. In spite of an attempt to reconcile after a 1993 separation, in 1997 divorce proceedings were instituted.

In December 1994, during the reconciliation period, Plaintiff agreed to co-sign with Debtor on a home equity loan from PNC Bank ("PNC loan") for $28,800.00 to help Debtor with NERA's financial problems. Despite Debtor's promise to make all the loan payments, Plaintiff has regularly made the $342.92 monthly payment since November 1997.

While the divorce proceedings were pending, Plaintiff was required to pay $360.00 per month in spousal support to the Debtor while Debtor paid $150.00 per month in child support. At the time of this trial, Debtor's child support obligation was $157.62 per bi-weekly pay period.

After a hearing on equitable distribution concerning the validity of the Agreement,

---

1. Drafted with the assistance of Wendy E. Morris, Law Clerk.

2. Although Plaintiff tendered a personal check equal to Debtor's interest in 1992, Debtor did not transfer his legal interest in the home until August 2000. Furthermore, Debtor's company, NERA, eventually failed and all of the rental properties were lost in foreclosure.

the Master in Divorce concluded that the agreement was valid and binding and recommended a distribution in accordance with its provisions. With respect to the marital residence, the Master recommended that Plaintiff receive the home "minus the PNC loan with a balance of approximately $18,500.00 as the loan is attributable to a debt created by the Defendant's business, NERA." Plaintiff's Exhibit No. 1. Based on the testimony of James Phillips, state court Master, I find that the residence was not encumbered by any other liens at the time of his recommendation. The state court entered its opinion in May 2000 approving the Master's Report. In September 2000, Plaintiff instituted contempt proceedings against Debtor for failure to pay the PNC loan. Debtor filed his Chapter 7 bankruptcy case before the matter was heard in state court.

At issue before me is whether Debtor's obligation to Plaintiff to pay the PNC loan is excepted from discharge under either subsection 523(a)(5) or 523(a)(15) of the Bankruptcy Code ("Code"). Plaintiff contends that the obligation providing shelter for the parties' minor children is in the nature of maintenance or support and is therefore excepted from discharge under subsection 523(a)(5). In the alternative Plaintiff argues that it is excepted from discharge—either in total or part—under subsection 523(a)(15). Debtor argues that the obligation is not in the nature of support nor does it fall under the purview of exclusion under subsection 523(a)(15).

## DISCUSSION

An obligation to a former spouse which arises from an equitable distribution order might be discharged in a bankruptcy unless excepted by either subsection 523(a)(5) or 523(a)(15) of the Bankruptcy Code.

The applicability of either subsection 523(a)(5) or 523(a)(15) hinges on Plaintiff establishing that the court ordered equitable distribution placed the parties in a creditor-debtor relationship with respect to the obligation at issue. The Code defines a debt as a "liability on a claim" and a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. §§ 101(12), (5). The Supreme Court defines a right to payment as "nothing more nor less than an enforceable obligation." *See Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Cohen v. de la Cruz*, 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Whether the obligation in question is a debt which is enforceable against Debtor, requires application of nonbankruptcy law to measure its validity. *See Grogan v. Garner*, 498 U.S. 279, 283, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Avellino & Bienes v. M. Frenville, Co. Inc. (In re M. Frenville Co. Inc.)*, 744 F.2d 332, 337 (3d Cir.1984).

Under Pennsylvania law, section 3502(e)(9) of the Divorce Code allows a former spouse to enforce an obligation imposed in an equitable distribution order through state court imposed remedies.[3] As a result, the obligation is enforceable—

---

**3.** 23 Pa. Cons.Stat. § 3502(e), provides:

(e) **Powers of the court.**-If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

(1) enter judgment;

capable of being enforced—against a former spouse by virtue of the court ordered equitable distribution. The effect of an enforceable court ordered distribution is to create a liability against a debtor in favor of a former spouse. In this case, Debtor's responsibility to Plaintiff to pay the PNC loan is a debt for the purposes of the court's analysis of subsection 523(a)(5) and 523(a)(15).

Subsection 523(a)(5) provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, in determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—...

(B) such debt includes a liability designated as alimony, maintenance, or support unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5).

■ Plaintiff bears the burden of establishing by a preponderance of the evidence that the PNC loan is in the nature of alimony, maintenance or support and that it is thereby excepted from discharge. *See Grogan,* 498 U.S. at 288, 111 S.Ct. 654. Federal standards are used when determining whether a debt is in the nature of either alimony, maintenance or support and not state law. *See Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 762 (3d Cir.1990). "[A] debt could be in the 'nature of support' under 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Yeates v. Yeates (In re Yeates),* 807 F.2d 874, 878 (10th Cir.1986). When conducting this examination, this court must rely on the state court's intent at the time the equitable distribution was made and not the intent of the parties. *See Doloff v. Doloff (In re Doloff),* 1996 WL 31856, *2 (Bankr. M.D.Pa. Jan. 16, 1996).

■ As the Third Circuit stated in *Gianakas,* this intent it best measured by considering: (1) the language and substance of the settlement in the context of surrounding circumstances, using extrinsic evidence if necessary; (2) the parties' financial circumstances at the time of the settlement; and (3) the function served by the obligation at the time of the divorce. *See* 917 F.2d at 762–63.

■ Although the Court has not been made aware of the contents of the state

(2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;
(3) award interest on unpaid installments;
(4) order and direct the transfer or sale of any property required in order to comply with the court order;
(5) require security to insure future payments in compliance with the court's order;
(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order including but not limited to commitment of the person to the county jail for a period not to exceed six months;
(7) award counsel fees and costs;
(8) attach wages; or
(9) find the party in contempt.

court opinion, I do have the aid of the Master's Report which was upheld by the state court. Unfortunately, the Master's Report addresses only the validity of the 1992 Agreement and the distribution of the assets contained therein. The recommendation section provides that the marital residence would go to Plaintiff "minus the outstanding PNC loan with a balance of approximately $18,500 as the loan is attributed to a debt created by the Defendant's business, NERA." Plaintiff's Exhibit No. 1. This text seems to contradict Mr. Phillips' testimony before this Court that he "felt that if we gave this obligation to Mr. Mannix, it would be paying for the marital— well, not the marital residence because it was—it would be paying something on the residence where the two children were living ... And I considered this as an obligation for Mr. Mannix to provide a house, a home for his children." Transcript of July 3, 2001 at p. 17 (Doc. # 11A). Although this testimony can help the Court decipher the state court's intent, in this case, it is at odds with the language within the Report.

During the divorce proceedings, Plaintiff, considering her various investments and savings, was in a more financially advantageous position than Debtor. Furthermore, the bulk of Plaintiff's assets at the time of equitable distribution were liquid investments whereas Debtor's assets were tied up in a failing business. In addition, the conclusion that Plaintiff was more financially sound than Debtor at the time of the equitable distribution is supported by the fact that she was ordered by the state to pay spousal support during the pendency of the divorce proceeding.

Since Debtor has not paid any monies toward the obligation since equitable distribution was ordered, the Court will rely on the intended function to be served as outlined in *Pollock*. *See Pollock v. Pollock (In re Pollock)*, 150 B.R. 584, 588 (Bankr. M.D.Pa.1992). As the Third Circuit noted in *Gianakas*, a "great weight of authority holds that a spouse's assumption of mortgage debts which enable members of the family to remain in the marital residence is an obligation in the nature of support, maintenance or alimony." 917 F.2d. at 764 (citations omitted). The Court finds it difficult to conclude that Debtor's obligation to Plaintiff to pay the PNC loan is grounded in the belief that it was necessary to enable his children to receive shelter. *Cf. Pollock*, 150 B.R. 584 (In interpreting a marital agreement this court held that it was the intended function of both parties that debtor's responsibility of assuming the second mortgage payments was to provide shelter to his minor child based on plaintiff's testimony that she could not afford the payments and debtor's testimony that he agreed to assume the loan so that his child could live in the family home). The Court views a difference between those situations and the present case. Debtor's responsibility for paying the PNC loan did not *enable* Plaintiff and their minor children to remain in the home. The residence was only encumbered by the PNC loan at the time of both the hearing on equitable distribution before the Master and the state court's order for equitable distribution. There is no evidence suggesting that at the time of divorce Plaintiff was either placed at a financial disadvantage by having to make these payments or that she was unable to make them in the future. Nor is there evidence that she needed Debtor to satisfy the debt so she and the children could remain in the home. Plaintiff testified that she occasionally made the payments from her own personal accounts during the period of reconciliation whenever Debtor did not. It seems clear that the intended function of the obligation was to reimburse Plaintiff for a loan used to pay NERA's creditors.

Relying on the weight of the evidence, the Court is not persuaded that this obligation is in the nature of either alimony, maintenance or support. This Court finds that the obligation is not excepted from discharge under subsection 523(a)(5). Whether the obligation is excepted from discharge based on subsection 523(a)(15) requires further analysis.

Subsection 523(a)(15), provides:

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court or record, a determination made in accordance with State or territorial law by a governmental unit unless-

> (A) the debtor does not have the ability to pay such debt for income or property of the debtor not reasonably necessary to be expended from the maintenance or support of the debtor or a dependent of the debtor ...; or

> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15).

Prior to the adoption of subsection 523(a)(15), debtors were able to discharge property settlement debts from separation or divorce proceedings if they were not in the nature of alimony, maintenance or support. Recognizing that debtors were discharging property settlement debts that they had originally agreed to pay in exchange for a reduction in support payments or in lieu of paying support, Congress passed subsection

523(a)(15) to substantially limit a debtor's ability to discharge obligations owed to a former spouse. *See* H.R.Rep. No. 103–835, at 54 (1994), U.S.Code Cong. & Admin.News 1994, pp. 3340, 3363.

In considering the dischargeability of the debt, the Plaintiff must initially prove by a preponderance of the evidence that the imposed obligation is a debt that was incurred by Debtor during the divorce proceeding. *See Grogan,* 498 U.S. at 290, 111 S.Ct. 654. Once established, the burden shifts to Debtor to establish that the debt should be discharged based on either subsection 523(a)(15)(A) or (B). *See Shellem v. Koons (In re Koons),* 206 B.R. 768, 773 (Bankr.E.D.Pa.1997)(citing *Stone v. Stone (In re Stone),* 199 B.R. 753 (Bankr.N.D.Ala.1996)). A sufficient showing under either exception shifts the burden back to Plaintiff to prove otherwise. *See Colangelo v. Colangelo (In re Colangelo),* 206 B.R. 78, 84 (Bankr. M.D.Pa.1996).

Since this Court has already found that the obligation is a debt not excepted from discharge under subsection 523(a)(5), Plaintiff only needs to prove that Debtor "incurred" it in the course of their divorce. Without citation to legal authority, Debtor argues that this debt was not incurred by Debtor during the parties' divorce. The Code unfortunately fails to define "incurred". Any attempt at statutory interpretation must first begin with the text. *See Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The Supreme Court has repeatedly held "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct.

1146, 117 L.Ed.2d 391 (1992) (citations omitted). If the language is clear and unambiguous, "the sole function of the court is to enforce the statute according to its terms." *Boston University v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir.2002)(citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290(1989)).

■ The word "incurred" is not a specialized term of art that should elicit an interpretation contrary to its everyday meaning. The ordinary meaning of a statutory term should be substituted in the absence of a statutory definition. *See e.g. F.D.I.C. v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Smith v. United States*, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993); *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). Black's Law Dictionary defines the root word "incur" as "to suffer or bring on oneself (a liability or expense)." Black's Law Dictionary (7th ed.1999).

Based on the plain meaning of the word, I conclude that Plaintiff's burden is thereby met if the divorce proceedings resulted in Debtor bringing either a liability to the Plaintiff, non-debtor spouse, or an expense upon himself to pay the PNC loan.

It is well established that both the creation and enforceability of obligations imposed in connection to state ordered equitable distribution are governed by state law, absent an overriding federal provision. *See Grogan*, 498 U.S. at 283–84, 111 S.Ct. 654. As established above, Debtor's obligation to Plaintiff to pay the PNC loan amounts to an enforceable obligation, or debt, created under Pennsylvania's domestic relations law. *See 23 Pa. Cons.Stat. § 3502(e).* A determination of whether Debtor incurred this debt to Plaintiff in the course of the divorce requires further analysis of Pennsylvania's domestic relations law.

Pennsylvania law gives Plaintiff the right to enforce Debtor's compliance with the equitable distribution order. *See id.* With respect to the debt at issue, this statutory right places an implied obligation on Debtor to hold Plaintiff harmless from future liability to PNC. Although the divorce proceedings did not alter either parties' personal liability to PNC, it did create a new liability running from Debtor to Plaintiff which was not in existence prior to the commencement of either the separation or divorce proceedings. This liability to hold Plaintiff harmless is enforceable under Pennsylvania law despite the fact that specific indemnification language is absent from the order. 23 Pa.C.S.A. § 3502(e); *accord Richardson v. Richardson*, 774 A.2d 1267 (Pa.Super.2001). This Court is therefore satisfied that Plaintiff has met her burden under the subsection.

■ The burden now shifts to Debtor to prove that he either does not have the ability to pay the debt or that the benefit of a discharge outweighs any detriment Plaintiff might experience as a result. *See 11 U.S.C. §§ 523(a)(15)(A) and (B).* These exceptions are read in the disjunctive and a debt will not be excepted from discharge if this Court finds that Debtor can satisfy his burden under either limitation. *See Bubp v. Romer (In re Romer)*, 254 B.R. 207, 212 (Bankr. N.D.Ohio 2000). Subsection 523(a)(15)(A), or the "ability to pay" test, forces the court to "engage in the unenviable task of scrutinizing [Debtor's] schedule of income and expenditures." *In re Johnson*, 241 B.R. 394, 398 (Bankr.E.D.Tex.1999). Whether Debtor possesses the resources necessary to pay the debt, is a question of fact. *Bolger v. Bolger (In re Bolger)*, 1998 WL 351032, *4 (Bankr.N.D. Ill. June 18, 1998). Similar to the "disposable income" analysis

performed when confirming Chapter 13 cases, the "ability to pay" test requires a finding that Debtor's expenses are reasonably necessary for the maintenance or support of himself and his dependents.[4]

Courts disagree on the point in time a debtor's ability to pay should be measured. *See e.g. Anthony v. Anthony (In re Anthony)*, 190 B.R. 433 (Bankr. N.D.Ala.1995)(the petition filing date); *In re Hesson*, 190 B.R. 229 (Bankr.D.Md. 1995)(the time of trial); *Hill v. Hill (In re Hill)* 184 B.R. 750 (Bankr.N.D.Ill.1995)(the date the complaint is filed). In addition, whether a debtor's "ability" should encompass his earning potential or whether it should be limited to a "snapshot" of a debtor's financial capacity at a specified point in time has also become an issue amongst bankruptcy courts. *See e.g. Henderson v. Henderson (In re Henderson)*, 200 B.R. 322 (Bankr. N.D.Ohio 1996)(holding that a court can consider a debtor's prospective earning ability); *But see Brasslett v. Brasslett (In re Brasslett)*, 233 B.R. 177 (Bankr.D.Me. 1999)(court concluded that it could not take into account events that might occur afterwards to alter a debtor's ability to pay the debt). In the absence of statutory guidance, this Court will measure Debtor's ability to pay as of the trial date. *Roshan v. Nouri (In re Nouri)*, 304 B.R. 155, 163, 2003 WL 23192668, Adv. No. 5–02–00090A, slip op. at 12 (Bankr.M.D.Pa. filed August 1, 2003).

Various bankruptcy courts have disagreed on whether a live-in companion's financial circumstances should be considered under the "ability to pay" test. Although statutory authority is absent, this Court agrees with the reasoning of those courts which conclude that its inclusion is necessary if they are financially interdependent on each other. *See e.g. Short v. Short (In re Short)*, 232 F.3d 1018 (9th Cir.2000), *In re Crosswhite*, 148 F.3d 879 (7th Cir.1998); *Simon v. Murrell (In re Murrell)*, 257 B.R. 386 (Bankr.D.Conn. 2001); *Foto v. Foto (In re Foto)*, 258 B.R. 567 (Bankr.S.D.N.Y.2000); *Cleveland v. Cleveland (In re Cleveland)*, 198 B.R. 394(Bankr.N.D.Ga.1996); *Koons*, 206 B.R. 768. *Cf. Willey v. Willey (In re Willey)*, 198 B.R. 1007 (Bankr.S.D.Fla.1996)(holding that imputing girlfriend's income on debtor "could lead to a chilling effect on courtship and remarriage of divorced partners"). In this case, a look at the complete economic circumstances of Debtor's household is necessary to determine whether he possesses income not reasonably necessary for the support of himself and his dependents. A live-in companion often has a direct impact on a debtor's financial situation. Although co-habitation does not necessarily improve a debtor's financial position, it assists the court to determine the extent of his ability to pay a debt from his own income. As the court stated in *Halper*, the existence of "other sources of income may relieve the debtor of the need to completely devote his income to his own support and that of his

---

4. Section 1325(b) provides, in pertinent part: (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . .

 (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) for purposes of this section disposable income means income which is received by the debtor and which is not reasonably necessary to be expended—

 (A) for the maintenance or support of the debtor . . .

dependents." *Halper v. Halper (In re Halper)*, 213 B.R. 279, 284 (Bankr.D.N.J.1997)(citing *Cleveland*, 198 B.R. at 399).

With regard to what expenses are considered "reasonably necessary," bankruptcy courts do not rely on an universal standard. *See In re Nicola*, 244 B.R. 795, 797 (Bankr.N.D.Ill.2000). Some courts think expenses should be limited to only those necessary for basic needs. *See e.g. Hill*, 184 B.R. 750; *In re Jones*, 55 B.R. 462 (Bankr.D.Minn.1985). Whereas, many courts will only criticize a debtor's budget in extreme cases of overindulgence. *See e.g. In re Hansen*, 244 B.R. 799 (Bankr. N.D.Ill.2000); *In re Zaleta*, 211 B.R. 178 (Bankr.M.D.Pa.1997); *Willey*, 198 B.R. 1007; *In re Navarro*, 83 B.R. 348 (Bankr. E.D.Pa.1988). This court is inclined to follow its position in *Zaleta* and review the reasonableness of expenses in light of a debtor's surrounding circumstances.

 In the event Debtor possesses either income or property not reasonably necessary to support himself or his dependents, a further issue arises as to whether this Court has the power to partially discharge the debt. Two lines of thought have emerged. Courts in support of partial discharges have based their reasoning on the legislative intent of the drafters. *See e.g. Pino v. Pino (In re Pino)*, 268 B.R. 483 (Bankr.W.D.Tex.2001); *Alexander v. Alexander (In re Alexander)*, 263 B.R. 800 (Bankr.W.D.Ky.2001); *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116 (9th Cir.2000); *McGinnis v. McGinnis (In re McGinnis)*, 194 B.R. 917 (Bankr. N.D.Ala.1996); *Comisky v. Comisky (In re Comisky)*, 183 B.R. 883 (Bankr.N.D.Cal. 1995); *In re Smither*, 194 B.R. 102 (Bankr. W.D.Ky.1996).

Other courts, however, follow the "all or nothing" approach and conclude that they lack the power to grant partial discharges

of subsection 523(a)(15) debts in Chapter 7 cases. *See e.g. In re Ballard*, 2001 WL 1946239 (Bankr.E.D.Va. Jul.18, 2001); *Brasslett v. Brasslett (In re Brasslett)*, 233 B.R. 177 (Bankr.D.Me.1999); *Fitzsimonds v. Haines (In re Haines)*, 210 B.R. 586 (Bankr.S.D.Cal.1997); *In re Iler*, 1997 WL 33474942 (Bankr.S.D.Ga. Sept.3, 1997); *Taylor v. Taylor (In re Taylor)*, 191 B.R. 760 (Bankr.N.D.Ill.1996); *Collins v. Florez (In re Florez)*, 191 B.R. 112 (Bankr. N.D.Ill.1995); *Silvers v. Silvers (In re Silvers)*, 187 B.R. 648 (Bankr.W.D.Mo.1995). This Court is inclined to follow the "all or nothing" approach for the following reasons.

Although a partial discharge may provide a more equitable result, doing so is beyond the powers of this Court. Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or prevent an abuse of process.

11 U.S.C. § 105(a).

 This equitable power should not be used to "create substantive rights that would otherwise be unavailable under the Code." *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir.1992). As stated by the Supreme Court, "[a] bankruptcy court is a court of equity and is guided by equitable doctrines and principles *except in so far as they are inconsistent with the Act*." *SEC v. United States Realty & Improvement*, 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), (emphasis ours).

This equitable power can not be used to circumvent Congress' treatment on this issue within the Code. *See generally United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)("[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do ... Nor is the Judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result.") This court can not use equitable reasons to engage in judicial legislating in order to recolor congressional intent. *See* 11 U.S.C. § 1328(a).

Adopting an "all or nothing" approach does not belie the legislative intent of the drafters. Even though at least one court has suggested a contrary position, nothing in the legislative history indicates that a partial discharge in Chapter 7 cases is in sync with its purpose or that an "all or nothing" approach defeats it. *See generally Smither,* 194 B.R. at 109 (the court concluded that "a mechanical reading of the subsection is harsh and clearly contrary to the dictates of reasonable statutory interpretation as well as [its] legislative history.") The House Report states that the subsection's purpose is to prevent the dischargeability of property settlement debts if a debtor possesses either the ability to pay the debt or the detrimental effect to a former spouse outweighs the benefit of granting debtor a discharge. *See* H.R.Rep. No. 103–835, at 54 (1994). Absent evidence supporting a congressional inclination toward partial discharges, this Court must give full effect to the plain meaning of the statute and fashion a remedy that is not at odds with the Code.

Congress is well versed in statutory construction and knows how to articulate the partial discharge option within the Code. In particular, Congress permits a court to partially discharge other debts enumerated in subsection 523(a). *See* 11 U.S.C. §§ 523(a)(2), (5) and (7). The inclusion of the phase "to the extent" within these subsections indicates that a partial discharge is possible with respect to each individual subsection. Nothing in the legislative history suggests that this phase connotes a definition contrary to its natural meaning. Such limiting language is absent from subsection 523(a)(15). The Supreme Court stated in *Bates,* that " 'where Congress includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' " *Bates v. United States,* 522 U.S. 23, 29, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)(citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Had Congress intended to permit partial discharges of subsection 523(a)(15) debts, it presumably would have articulated this intent as it did in subsections 523(a)(2), (5) and (7).

Concerning Debtor's ability to pay, a review of Debtor's household income and expenses raises several red flags. Debtor testified that his fiancé's net monthly income is $890.00 and submitted pay stubs from his two employers. Debtor nets $690.54 bi-weekly ($690.54 × 2.17=$1,498.47 monthly) from his stable source of income and has netted on average $176.43 a week ($176.43 × 4.33=$ 763.94 monthly), year-to date, from his part-time job. *See* Defendant's Exhibit Nos. 4 & 5. This results in an approximate monthly household income of $3,152.41.

Based on his testimony and submitted exhibits, the Court takes issue with a number of Debtor's expenses. Debtor presented a schedule of his average household monthly expenses at trial which is signifi-

cantly higher than what was listed on his originally filed Schedule J. *See* Defendant's Exhibit No. 6. Debtor's new budget lists expenses totaling $3,982.00 for all four individuals. Whereas his filed Schedule J showed expenses totaling $1,748.00. The Court is inclined to conclude that this significant increase is attributed to Debtor's post-petition co-habitation with his new fiancé and her two children, ages 19 and 17. It appears that Debtor would have this Court believe that his household is, on average, operating at a $829.59 deficit every month based on his reasonably necessary expenses. One of these expenses is a $700.00 per month food bill. Also identified is $160.00 a month for cigarettes and $500.00 for miscellaneous expenses—which included saving for vacations, purchasing household furnishings and socializing with Debtor's own children. Further included is Debtor's fiancé's credit card payment ($250.00).

From a mathematical standpoint, Debtor's new fiancé's income represents only 22% of the listed household expenses. What is missing from this query, and not addressed by either party at trial, is whether the fiancé's two children provide any level of financial contribution to the household expenses or if the fiancé receives child support. It appears that Debtor is paying the majority of the household expenses. The Court finds that Debtor has failed to establish an inability to pay the PNC obligation.

■ Although Debtor has failed to meet his burden under the "ability to pay" test, this Court can still discharge the debt if the benefit of a discharge outweighs any detrimental effect Plaintiff may experience as a result. *See* 11 U.S.C. § 523(a)(15)(B). Subsection 523(a)(15)(B), or the "totality of the circumstances" test, requires the court to use its "pure equitable powers" to subjectively value the parties' situation. *See*

*Phillips v. Phillips (In re Phillips)*, 187 B.R. 363, 369 (Bankr.M.D.Fla.1995). This test forces the Court to tackle the unenviable task of subjectively valuing how much impact a discharge would have on the parties' individual financial situations.

■ Despite the lack of statutory support in the Code, there is a consensus among several courts that a "totality of the circumstances" test requires the inclusion of the parties full economic circumstances. *See e.g. Gantz v. Gantz (In re Gantz)*, 192 B.R. 932 (Bankr.N.D.Ill.1996); *Celani v. Celani (In re Celani)*, 194 B.R. 719 (Bankr.D.Conn.1996). This includes information concerning the parties' total household income and expenses. This Court cannot properly weigh the potential adverse effects of a discharge on Plaintiff against Debtor's benefit of receiving it unless their household's financial circumstances are considered.

■ The Court concludes that the benefit of discharging this debt far outweighs any detrimental effect Plaintiff may experience. Exceptions to discharge should be construed liberally in favor of the honest, yet unfortunate, debtor. *See Grogan*, 498 U.S. at 279, 111 S.Ct. 654. Discharging this debt will help Debtor achieve a fresh start and start anew financially. This benefit encompasses not only his release from personal liability to Plaintiff, but also the emotional and legal aspects associated with future collection efforts in state court. Plaintiff testified that Debtor asked her not to pursue the contempt charges in state court because he would then have to file for bankruptcy. As is evident, Debtor sought financial relief by filing his bankruptcy petition before the contempt matter was heard in state court. Despite the fact that Debtor's household income has increased since he moved in with his fiancé, his financial cir-

cumstances are just as grim now as they were before he moved.

Furthermore, the evidence indicates that Plaintiff will not experience a detrimental effect greater than the benefit received by Debtor. Plaintiff argues that her detriment includes the $18,500.00 liability, for which she would receive nothing in return. The Court finds that even this burden is minimal in light of the circumstances. Plaintiff testified that she has made all of the payments on the PNC loan since November 1997. She has not attempted to argue nor suggest that paying this debt would currently create a financial hardship or that she is financially unable to make future payments. Plaintiff was also in a financially better position than the Debtor at the time of trial. She still has her various investments and savings accounts which far exceed the balance on the PNC loan. Debtor on the other hand has nothing of the sort.

This Court holds that Debtor's obligation to Plaintiff is discharged under subsection 523(a)(15)(B).

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that judgment is entered in favor of the Defendant, Robert Mannix, and against Plaintiff, Diane Mannix. The debt at issue is not excepted from Defendant's discharge order under 11 U.S.C. § 523(a)(15).