In re Daniel D. SHREFFLER, Debtor.

Sheila R. Shreffler, Plaintiff,

v.

Daniel D. Shreffler, Defendant.

Bankruptcy No. 04–10088–WWB.
Adversary No. 04–1034.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 21, 2004.

Lloyd Wilson, Oil City, PA, for Debtor/Defendant.

Diane Hasek, Seneca, PA, for Plaintiff.

### MEMORANDUM OPINION

THOMAS P. AGRESTI, Bankruptcy Judge.

On October 20, 2004, trial on Plaintiff, Sheila R. Shreffler's, *Amended Complaint Requesting Denial of Discharge and Exception from Discharge Pursuant to 11 U.S.C. § 523(a)(15), 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 521(1)* against the Debtor, Daniel Shreffler, Plaintiff's former spouse, took place. Prior to trial, the Parties agreed the only issues before the Court were Plaintiff's claims in Counts I and II of the Amended Complaint involving debt dischargeability pursuant to 11 U.S.C. §§ 523(a)(15) and 523(a)(2)(A). On November 18, 2004 final argument on the Plaintiff's claim occurred after the Court allowed the Parties an opportunity to brief the remaining issues. Following argument the Court rendered its oral findings of fact and conclusions of law entering judgment pursuant to Fed. R. Bankr.P. 7052 and 9021.[1]

### BACKGROUND

In May of 2001 the Debtor and Plaintiff separated. On November 26, 2003 the property settlement agreement ("PSA") entered between the Parties was approved by the Court of Common Pleas of Venango County, Pennsylvania. The PSA provided that the marital residence was to be transferred to the husband, Daniel Shreffler ("Debtor"), and the wife, Sheila Shreffler ("Plaintiff") was to receive $9,000 from the

---

1. Consistent with the concept of 3rd Cir. LAR 3.1, at the time of entering judgment the Court reserved the right to file a formal, written opinion in the event of the filing of an appeal in this matter. A timely appeal was filed and the within Opinion follows, constituting the Court's findings of fact and conclusions of law. The Court's jurisdiction was not at issue.

Debtor in consideration for the transfer, 50% of the agreed upon value of $18,000. The Parties also agreed on the transfer of various items of personal property to the Debtor. As consideration for the transfer of her interest in the personal property, the Debtor was to remit $5,000 to the Plaintiff. One-half of the total $14,000 owed to Plaintiff was to be paid on December 24, 2003, and the remaining $7,000 was to be paid January 24, 2004.

Regarding marital liabilities, the Venango County Court also ordered that the Parties were to equally share in the payment of a joint Discover Card debt. The Parties stipulated that at the time of filing the bankruptcy the debt was $6,534 plus interest and the total monthly payment was $93.

On December 23, 2003 the Debtor signed his petition in bankruptcy which was ultimately filed on January 12, 2004 along with the appropriate schedules and statement of financial affairs. On December 24th, 2003, the first installment of $7,000 was payable by the Debtor to the Plaintiff. After the Debtor failed to pay the initial installment due under the PSA, a petition for contempt was filed by the Plaintiff in the Venango County Court ostensibly prompting the filing of Debtor's bankruptcy petition.

In February, 2004 the Debtor received a check in the amount of $10,000 from the Federal Emergency Management Agency ("FEMA"). It is undisputed the check was designated for "temporary housing" and that no property interest was created in favor of the Plaintiff. The check was issued as a result of the destruction of the marital residence due to a tornado. The check was negotiated post-petition by the Debtor.

Prior to trial, the Debtor stipulated and agreed to the non-dischargeability of $9,000 of the $14,000 debt claimed by Plaintiff which $9,000 represented her one-half interest in the real estate. As a result, the only non-dischargeability issues before the Court involve the Debtor's obligation to pay the remaining $5,000 and the payment of one-half of the Discover Card obligation payable in equal monthly installments of $46.50 per month until the debt is paid in full.

## DISCUSSION

Our analysis begins with Count I of Plaintiff's Amended Complaint involving discharge pursuant to Section 523(a)(15) of the Bankruptcy Code. 11 U.S.C. § 523(a)(15) provides:

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—...

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record ... unless—...

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor...; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;....

11 U.S.C. § 523(a)(15)(A), (B)

■ In considering the dischargeability of debt, the Plaintiff must initially prove that the obligation imposed is a debt that was incurred by the Debtor during the divorce proceedings but not the kind described in Section 523(a)(5) involving ali-

mony, maintenance or support. 11 U.S.C. § 523(a)(15). Once this is established the burden then shifts to the Debtor to show that the debt should be discharged based on Section 523(a)(15)(A) or (B). A sufficient showing under either exception shifts the burden back to the Plaintiff to prove otherwise. *Mannix v. Mannix,* 303 B.R. 587 (Bankr.M.D.Pa.2003).

 Here, the Parties stipulated that the debt in question is not a Section 523(a)(5) debt. As such, Plaintiff need only prove that the Debtor "incurred" the debt in the course of the divorce. *Mannix, supra.* In this case, both debts under consideration arose from the PSA. The obligation to pay Plaintiff $5,000 did not even exist prior to the divorce. It was created by the PSA in consideration for Plaintiff's agreement to transfer her interest in the personal property to the Debtor. Regarding the Discover Card debt, "(a)lthough the divorce proceedings did not alter either parties' personal liability to (Discover Card) it did create a new liability running from the Debtor to Plaintiff which was not in existence prior to commencement of . . . the divorce proceeding" *Mannix, supra,* p. 596. Plaintiff therefore has met her burden satisfying the threshold inquiry for relief under Section 523(a)(15). As such, the burden then shifts to the Debtor to provide the neces-

sary evidence under Section 523(a)(15)(A) or (B) to shift the burden back to the Plaintiff to prove otherwise.

Debtor is a certified welder by trade. However, Debtor is currently employed at a nursing facility making $7 per hour.[2] He testified his biweekly net pay is approximately $430 resulting in net monthly pay of approximately $931 per month. Debtor stated that he lived in an apartment in Oil City but did not testify as to any specific monthly rental amount. Although the Debtor indicated he had "monthly expenses" of electric, water, sewage and phone, no specific amounts were ever offered into testimony. The Debtor did not state whether any other individuals shared the apartment expenses with him however in his Answer filed on the morning of trial the Debtor does allege he "now resides at the residence of a third party." (Answer to Amended Complaint, Paragraph 11.)

The only specific monthly expenses offered into evidence by the Debtor as actually being expended by him were for food in the amount of $150 per month, clothing averaging $17.50 per week, or approximately $76 a month, and automobile insurance at $120 per month. If we reduce Debtor's monthly income by the articulated expenses of $346, disposable income of $585 is available to the Debtor each month

**2.** The Plaintiff believes that because the Debtor is a welder by trade he has the ability to earn more but has not done so. Plaintiff cites *Johnston v. Henson,* 197 B.R. 299 (Bankr. E.D.Ark.1996) for the proposition that this Court should look to the Debtor's future financial ability in determining Count I of the Complaint. On cross-examination the Debtor testified that he had applied for a welding position as recently as the summer of 2004 at Joy Manufacturing. In 2003 he also applied for a welding position but was not hired. The Debtor stated he was not hired in 2004 because the company said it was not hiring welders. Approximate pay for a welder in that position would be $15 an hour. Plaintiff attempted to show on cross-examination that the Debtor was not hired for some reasons associated with urine testing, but that testimony was neither clear nor dispositive in the mind of the Court. The Court recognizes that Debtor's previous earnings and earning capacity were greater than in existence at the time of the bankruptcy. However, the Court is not able to draw any determinative conclusions from this. Debtor testified that he had sought employment from manufacturers several times. In addition, it is difficult for this Court to fully determine Debtor's lack of employment opportunities in the present economic climate based upon the present record before the Court.

for other expenses and non-necessities. Clearly sufficient funds exist for the Debtor to make the monthly Discover Card payment of $46.50 as obligated by him in the PSA.

The Debtor has also had the use and benefit of the $10,000 FEMA proceeds. While the moneys resulted from the tornado damage to the marital residence, possession to which the Debtor apparently was entitled via the PSA, none of these funds have been used for repairs to the residence. The Debtor claims he cashed the check and did not put the cash in a bank account. Rather he apparently has kept the cash in his own possession. There is nothing on the record to explain whatever happened to these funds; whether or not the monies have been used in any regard whatsoever. Based upon the record before it, the Court can only assume the Debtor continues to possess the $10,000 in the form of cash.

In addition to his net income and the FEMA proceeds, the Debtor also possesses personal property identified in the PSA having a "value of $5,000" at the time of entering the agreement in November, 2003. This property included the $4,600 insurance settlement used to purchase the Debtor's car, a custom 1977 Triumph valued at the very least between $500 to $750 and miscellaneous other items of household goods, including welding tools and equipment, lawn and garden tools and equipment, sporting goods, washer and dryer, television, stereo and even a coin collection (hereinafter "personalty"), all of which ensure the Debtor's fresh start following bankruptcy.

After all expenses were identified and to extent the specific dollar amount indicated, the Debtor has a net monthly take-home pay of approximately $585. Clearly Debtor has sufficient disposable income to pay the $46.50 monthly Discover Card debt.

Further, based on the record before us the Debtor has sufficient income to pay Plaintiff a monthly sum toward the $5,000 debt owed pursuant to the PSA. The Debtor owns his vehicle free and clear and the personalty retained as a result of the PSA provides him his welding tools, if he decides to go back to the welding trade, and basic "creature comforts" of life.

The Debtor also retains his interest in the marital real estate. The agreed, stipulated value of this real estate is $18,000. Based on the record before us, presumptively the sale of the real estate will net the Debtor $9,000 creating a further fund for payment of the remaining $5,000 claimed by the Plaintiff.

Based upon the facts in this particular case, the Court finds that the Debtor has failed in his burden under Section 523(a)(15)(A) to show that as of the date of trial he does not have the ability to make payment of the two debts owed the Plaintiff. The Debtor has two funds available to him from which to make payment of the $5,000: his $9,000 interest in the real estate and the $10,000 FEMA cash he currently possesses. Based upon the record in this particular case, even if we grant the Debtor some arbitrary, deminimus expense for other, undocumented living expenses, none of which he articulated or proved, there are sufficient funds available to him to allow him to make the $46.50 payment representing one-half of the monthly Discover Card debt. He also has sufficient remaining disposable income to make payment towards resolution of the $5,000 debt even if he chose not to tap the two other available funds involving the real estate or FEMA proceeds.

Even though the Court has factually determined that the Debtor has sufficient resources and the "ability to pay" the debts pursuant to Section 523(a)(15)(A), a

second inquiry under § 523(a)(15)(B) must also occur. Again, it is the Debtor's burden to go forward. Under § 523(a)(15)(B) we must employ a balancing test to determine whether or not the benefit of a discharge outweighs any detriment Plaintiff might experience as a result.

Other than attempting to show lack of funds available to make payment under 11 U.S.C. § 523(a)(15)(A), the Debtor failed to produce any evidence of any harm he would suffer if he were denied discharge of these debts. On the other hand, even assuming the Debtor met his burden in this regard, Plaintiff provided significant testimony showing the harm to her if she were not to receive payment for these obligations.

Plaintiff testified that she makes $10.61 per hour and every other week takes home net pay of $607 to $619. Within weeks of the trial she moved from a $400 per month apartment to a $250 per month apartment to reduce expenses. She is currently helping to pay off a car loan for her son although that responsibility will end in the not too distant future. She identified separate monthly expenses for electric, fuel, oil, phone, food, clothing, laundry, medical and dental, gasoline, vehicle maintenance, insurance, car payments, and her half of the monthly Discover Card debt, all of which totaled approximately $1,240.

Plaintiff lives "paycheck to paycheck." She is working to her capacity. The Debtor stipulated to this. Debtor agreed Plaintiff's income "meets her expenses", i.e., her expenses were roughly equivalent to her income. Plaintiff testified that she now owes approximately $5,000 for previous attorney's fees as well as unspecified attorney's fees involved in the prosecution of this particular matter. She has approximately $2,000 in savings and owns a 2000 Ford Focus in need of replacement. She basically possesses no other assets. Plain-

tiff relied on the funds to be received from the Debtor as a result of the property settlement for payment of attorney's fees, at least in part, and for purchase of a new vehicle.

Clearly the harm to the Plaintiff outweighs any benefit the Debtor may receive if the debts were discharged. Day to day, Plaintiff barely meets her expenses. She needs a new car and is straddled by attorney fees in excess of $5,000 with no ability to make payment. She's been put on notice by Discover Card that it will soon require her to make the entire monthly payment. Any unforeseen, significant financial obligation could create havoc for her financial well-being. On the other hand, even if the Debtor were required to make payment of both obligations he has sufficient means to absorb these expenses without dramatically affecting his lifestyle.

Although not raised in his Answer as affirmative defenses, following trial the Debtor argued a number of issues in denial of Plaintiff's claim. The Debtor claimed that since payment of the joint debts owed by the Parties would not have an appreciable impact on the Plaintiff, the debts should be discharged. He referenced *Taylor v. Taylor*, 199 B.R. 37 (N.D.Ill.1996) for this proposition claiming that if the payment of the debt will not make a "substantial difference", then the Court should allow the debt to be discharged. *Taylor* does not create a "substantial difference test." Moreover, the facts of *Taylor* are completely distinguishable from the present facts. In *Taylor*, unlike here, it was undisputed that the financial situation of the non-debtor spouse was considerably superior to that of the Debtor husband. The Court believes *Taylor* inapplicable here.

Also raised for the first time in argument, the Debtor suggested that the

Plaintiff should herself be required to file personal bankruptcy rather than for the Court to require the Debtor to pay the previously agreed upon obligations. The cases cited by the Debtor do not create any such requirement. The court in *In re Hill*, 184 B.R. 750 (Bankr.N.D.Ill.1995) merely acknowledged that the non-Debtor spouse *could* file bankruptcy as an option. Thereafter, the court proceeded to identify potential issues complicating such an event. This Court does not believe that the availability of personal bankruptcy constitutes a defense to a Section 523(a)(15) action, nor has the Court found any cases to support such a notion.

The Debtor next argued the absence of a "hold harmless" clause in the PSA precluded the relief requested by Plaintiff. The Debtor argued that because the PSA did not contain "magic language" in the form of a "hold harmless" clause specifically stating that each spouse would indemnify and hold the other harmless, the debts are dischargeable. As with the other arguments raised by the Debtor, his belief as to the significance of such language is misplaced.

No cases cited by the Debtor create a *per se* rule requiring such language in a marital settlement agreement. The importance of a hold harmless clause in the cases cited arose for the purpose of creating a new debt "incurred in divorce" thereby fulfilling the threshold inquiry under Section 523(a)(15). *In re Stegall*, 188 B.R. 597 (Bankr.W.D.Mo.1995) only stated that if the parties' settlement agreement did contain a "hold harmless" provision a new obligation was incurred pursuant to the divorce. When confronted with the issue most courts look to applicable non-bankruptcy law to determine if the spouse has an independent right to enforce the terms of the dissolution decree. See: *In re Balm*, 2004 WL 1637033 (Bankr.N.D.Iowa 2004) and the cases cited therein. If such right exists, then most courts find that the decree of divorce gives rise to a new and distinct obligation as required by the language of Section 523(a)(15). *Id.* at *2

■■ *Mannix* sets forth the preferred approach in this situation. There the court found Pennsylvania provided the right to enforce an obligation created under its statutory domestic relations law (23 Pa.C.S.A. § 3502(e)). In examining a debt payable by the parties to a third party, *Mannix* held that this statutory right placed an implied burden on the debtor to hold the non-debtor spouse harmless for future liability to the creditor. This liability to hold a non-Debtor spouse "harmless" was enforceable under Pennsylvania law despite the fact that specific indemnification language was absent from the order approving the property settlement agreement. This view is in keeping with other courts that have held that the dissolution decree itself is an enforceable judgment creating new legal consequences that extinguish previous obligations. Therefore, Section 523(a)(15) is applicable in this particular case notwithstanding that the PSA may lack specific hold harmless or indemnification language. *Mannix, supra.; In re Gibson*, 219 B.R. 195 (6th Cir. BAP 1998). Accordingly, this Court finds that under the relevant statutory provisions and case law, lack of a specific hold harmless provision in the PSA is not controlling as to the applicability of Section 523(a)(15) in determining the issue of non-dischargeability. Furthermore, under Pennsylvania law, the property settlement agreement can itself provide the basis for meeting the threshold requirements of a Section 523(a)(15) action so long as the obligations relate to non Section 523(a)(5) debts. *Mannix, supra.*

■ In Count II of her Amended Complaint, Plaintiff claims that the debts aris-

ing out of the PSA are also non-dischargeable under Section 523(a)(2)(A) due to the Debtor's purported fraud by the mere filing of the bankruptcy itself. While Plaintiff cites some case law supporting such an approach, those cases predate the 1994 revisions to the Bankruptcy Code. Since the time those cases were decided the Code has been updated to include specific provisions regarding domestic relation matters. While marital obligations are not specifically excluded from the purview of Section 523(a)(2)(A), more recently the majority of courts decline to follow that approach. *In re Guske*, 243 B.R. 359, 364 (6th Cir. BAP 2000); But see, *In re Bethel*, 302 B.R. 205, 207 (N.D.Ohio 2003). Although the possibility exists that a case giving rise to a Section 523(a)(2)(A) action in the marital obligation context may be appropriate at some time, we believe that under normal circumstances debts arising out of a marital dissolution are more appropriately addressed under either Section 523(a)(5) or Section 523(a)(15).

 Assuming such a cause of action was appropriate in this instance, Plaintiff did not meet her burden as to the elements of fraud. In a Section 523(a)(2)(A) action, the Plaintiff must prove five elements. First, that the Debtor made a representation. Second, that the Debtor knew at the time of making the representation that it was false. Third, the Debtor made the representation with the intent of deceiving the creditor. Fourth, the creditor justifiably relied on the representation. And, fifth, the creditor sustained loss as the proximate result of the representation. *In re Santos*, 304 B.R. 639, 657 (Bankr. D.N.J.2004).

 There is no support in this record that the Debtor made any representation with the purpose of deceiving the Plaintiff. While Debtor stated that he disagreed with his attorney when the $5,000

valuation was placed on the personalty as consideration for its transfer the testimony did not show that the Debtor entered into the agreement to deceive anyone. Contrary to Plaintiff's contention, the mere filing of bankruptcy following entry into a property settlement agreement does not *per se* establish an intent to deceive.

A very plausible explanation exists for the Debtor's actions. Despite the urging of his family law attorney to enter the PSA, the Debtor apparently did not believe he had the ability to timely make payments required under the agreement. Before any payment could be made the real estate had to be sold which Plaintiff knew had not been done. The Debtor apparently contacted bankruptcy counsel to be prepared to file bankruptcy in the event a petition for contempt was filed for failure to make the required payment. Bankruptcy counsel prepared the bankruptcy petition for such event. These facts do not support a finding of fraud. The mere filing of bankruptcy shortly after a property settlement agreement is entered, without more, does not satisfy Plaintiff's burden to establish fraud under Section 523(a)(2)(A). As such, Plaintiff's claim in Count II of the Amended Complaint is denied due to her failure to meet her burden of establishing the requisite intent to deceive.

## CONCLUSION

The Court finds that the Plaintiff has met her burden of proof under Section 523(a)(15) as set forth in Count I of the Amended Complaint. The Court also finds that the Debtor has failed to meet his burden of proof under both Sections 523(a)(15)(A) and 523(a)(15)(B). The Debtor failed to demonstrate that he is unable to make payment of the debts sought to be enforced in this particular action. The Debtor clearly has the ability

to make payment of the debts.[3] Nor has the Debtor shown that the benefit of dischargeability to him outweighs the detrimental consequences to the Plaintiff. The evidence clearly shows the contrary. Based on the record before the Court, the $5,000 debt and one half of the Discover Card debt payable in equal monthly installments of $46.50 until the debt is paid in full are non-dischargeable pursuant to 11 U.S.C. § 523(a)(15). An order incorporating by reference these findings of fact and conclusions of law was issued by this Court on November 16, 2004.

---

**3.** It had been suggested in argument that the Court find the debt partially dischargeable and partially non-dischargeable. No specific proposal was given the Court as to the manner in which to do so under the facts of this case. Regardless, it is clear to the Court that there is no support in the Bankruptcy Code to support a finding of partial dischargeability or non-dischargeability. *Mannix, supra.*