In re Harry N. POLLOCK, Debtor.

Gail S. POLLOCK, Plaintiff/Movant,

v.

Harry N. POLLOCK and John H. Doran, Esquire, Trustee, as his interest may appear, Defendants/Respondents.

In re Wally BOCHKAY, Debtor/Plaintiff,

v.

Shirley BOCHKAY, Defendant.

Bankruptcy Nos. 5–91–01539, 5–91–00922. Adv. Nos. 5–92–0025, 5–91–0144.

United States Bankruptcy Court, M.D. Pennsylvania.

Dec. 30, 1992.

Michael F. Salisbury, Lock Haven, PA, for Wally Bochkay.

Glenn Yanik, Wilkes–Barre, PA, for Shirley Bochkay.

Myles Wren, Scranton, PA, for Gail S. Pollock.

Stephen G. Bresset, Stroudsburg, PA, for Harry N. Pollock.

John H. Doran, Wilkes–Barre, PA, trustee/defendant.

## OPINION OF THE COURT

JOHN J. THOMAS, Bankruptcy Judge.

Before this Court is a group of litigations becoming more frequent before the Bankruptcy Court. These litigations deal with the dischargeability of certain domestic obligations owing by a debtor to a non-debtor.

Wally W. Bochkay filed bankruptcy under the provisions of Chapter 7 of the United States Bankruptcy Code on June 12, 1991.

At the time of the bankruptcy, Mr. Bochkay had various obligations to his ex-wife Shirley Bochkay and his minor child William Bochkay pursuant to a divorce decree entered December 23, 1988 by the Butler County Court for the state of Ohio. The said decree was approved by the parties thereto.

On November 25, 1991, the Debtor filed a Complaint to determine dischargeability against his ex-wife, Shirley Bochkay, alleging that the obligations under the property settlement order and decree are dischargeable in bankruptcy.

This matter came to trial before this Court on May 5, 1992. At that time, the parties agreed that the specific debt at issue was the Debtor's obligation under the divorce decree to pay a second mortgage to Second National Bank of Hamilton in the approximate amount of seven thousand four hundred dollars ($7,400.00).

On October 2, 1991, Harry Pollock filed for relief under Chapter 7 of the United States Bankruptcy Code.

On October 30, 1991, Mr. Pollock's ex-wife, Gail S. Pollock, filed a Motion for Relief from Automatic Stay Combined with a Motion for Abstention pursuant to 28 U.S.C. § 1334. On April 14, 1992, Mrs. Pollock filed a Complaint to determine dischargeability of debt and turnover of funds. These proceedings were all relative to the obligations incurred by the Debtor with regard to a separation and property settlement agreement dated August 15, 1989, between the Debtor and Gail Pollock, wherein the Debtor agreed to incur certain obligations pursuant to a divorce proceeding then pending in Carbon County.

Since the thrust of all issues in Pollock was whether the obligations incurred by the Debtor were dischargeable under 11 U.S.C. § 523(a)(5), the matters were combined for trial which commenced October 1, 1992.

The Complaint requests that this Court determine that alimony and support provided for in the aforesaid agreement be deemed non-dischargeable, as well as an obligation by Mr. Pollock to Mrs. Pollock to pay a One Hundred Fifteen Thousand Dollar ($115,000.00) sum in return for securing a conveyance of one half of the marital real estate.

## DISCUSSION

This marks the first time that this Judge has had the opportunity to speak on these matters.

The Court is fortunate to have the benefit of a Third Circuit Opinion which specifically outlines the applicable standards in determining the dischargeability of a domestic obligation. *In re Gianakas*, 917 F.2d 759 (3rd Cir.1990). We further have the benefit of a state court appellate decision which, coherently and methodically, enlightens this Court on the issues in a manner consistent with the holding of our Circuit. *Buccino v. Buccino*, 397 Pa.Super. 241, 580 A.2d 13 (1990). The initial focus of our problem begins with a recitation of 11 U.S.C. § 523(a)(5) which reads as follows:

§ 523 Exceptions to Discharge:

(a) A discharge under section 727, 1141, [,] 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b) ] does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act [42 U.S.C. § 602(a)(26) ], or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

■ Although the bankruptcy law accords no priority to these domestic obligations, (See 11 U.S.C. § 507) the statute clearly reflects the policy of the legislature to render non-dischargeable certain domestic debt from the general discharge provisions of the United States Bankruptcy Code.

■ Nevertheless, it is not every debt owing to a spouse, former spouse, or child that is rendered non-dischargeable by reason § 523 of the Bankruptcy Code. It is only that liability which is "actually in the nature of alimony, maintenance, or support".

As stated in *Buccino:*

Public policy recognizes the overriding need to insure necessary financial support for the divorced spouse and the children of a debtor who would otherwise be entitled to a general discharge in bankruptcy. Although the bankruptcy code, in general, attempts to offer the debtor a "fresh start", countervailing policies demand that marital obligations providing support remain exempt from discharge lest the bankruptcy laws create more societal problems than they solve. *Buccino v. Buccino*, 580 A.2d at Page 17.

The issue that this Court must analyze is whether the economic division of assets and income in *Bochkay* and *Pollock* represents the non-dischargeable "alimony, maintenance, and support" or the dischargeable property settlement.

As indicated previously, this Court has the benefit of Chief Judge Sloviter's opinion in *In re Gianakas*, wherein that Court concluded that "whether an obligation is in the nature of alimony, maintenance, or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement". *In re Gianakas*, 917 F.2d at Page 762.

The Court continues by explaining that the intent of the parties can best be found by examining three "indicators", as follows: 1) The language and substance of the agreement in the context of surrounding circumstances using extrinsic evidence if necessary; 2) The parties' financial circumstances at the time of the settlement; and, 3) The function served by the obligation at the time of the divorce or settlement.

The difficulty that this Court has in understanding what the Third Circuit meant by holding that the issue of dischargeability depends solely upon the "intent of the parties" centers on their statement that the "language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation." Id. at 763. This implies that in some cases, language alone may provide a conclusive answer. If that were the case, however, that interpretation would conflict with the words in the statute "but not to the extent that ... such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, and support."

■ The important "intent" then is not the *stated* intent, nor can it be the obvious intent to come away from the agreement and/or divorce order with as much funding as possible.

■ This Court agrees with the Eighth Circuit in *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984) wherein the crucial question was presented as "what function did the parties intend the agreement to serve when they entered into it". Id. at 683. In the case of a court order, it would be represented by the function intended by the court in entering the order.

In *Gianakas* the Third Circuit held that the third "indicator" of the parties' intent was "the function served by the obligation at the time of the divorce or settlement". *In re Gianakas*, 917 F.2d 759 at Page 763. This examination of the *actual* function is different than the dispositive question as to what was the *intended* function of the obligation incurred.

■ Accordingly, we conclude that *Gianakas* stands for the principle that if it was the intent of either of the parties that the function of the obligation was in the nature of alimony, maintenance, or support, then the debt is not dischargeable.

■ In determining what the *intended* function of the obligation was, this Court is required to look at three principal indicators: 1) the agreement and surrounding circumstances; 2) the parties financial cir-

cumstances at the time; and 3) the *actual* function of the obligation at the time of the divorce or settlement.

Restating the critical question in an alternative fashion, the issue becomes "at the time of the settlement, was it the intention of either of the parties that the award would function as alimony, maintenance, or support?". In the case of a court order, was this intention held by the court?

As we have indicated earlier, *In re Gianakas*, 917 F.2d 759, stands for the proposition that dischargeability hinges upon the specific intent of the parties to the agreement. As we have further analyzed, it is the function *intended* by the parties that determines the dischargeability of the obligation.

■ In *Bochkay* the Court is fortunate that both Plaintiff and Defendant, Debtor and non-debtor spouse agree that the function intended to be served by the Debtor's agreeing to incur sole responsibility for the second mortgage was to shelter the minor child, William Bochkay.

Mrs. Bochkay testified as follows:

"Q. What was the purpose of the Plaintiff's assumption of the second mortgage against the property?

"A. So that we could stay in the house. I couldn't forward (sic) to pay it an keep the house payments and everything else up.

"Q. Who is we when you refer to we?

"A. My son and myself, his son and myself."

(Transcript Page 33)

The Plaintiff/Debtor, Mr. Bochkay, later testified as follows:

"Q. At the time of this separation agreement that became part of the divorce decree, was it your desire for your son William to be able to live in the family home?

"A. Yes, it was.

"Q. Is that why you agreed to assume the second mortgage obligation on the marital home?

"A. Yes, it was."

(Transcript Page 33)

Since it was the intended function, agreed to by both spouses, that the second mortgage was assumed for the purposes of providing shelter to the minor child, William Bochkay, the custody of whom was with Mrs. Bochkay, this Court has no difficulty finding as a fact that the obligation was incurred for the purposes of maintenance and support of the minor child, William Bochkay, and is therefore rendered non-dischargeable.

In order to verify the conclusion that we have reached, this Court turns to the three indicators spelled out in *Gianakas.* The first indicator is the language of the agreement and extrinsic evidence which specifically indicates that alimony was being waived by both parties, and further sets forth a periodic payment of child support, but which does little else in explaining the intended functions of each commitment of the parties.

Indicator number two references the financial circumstances of the parties at the time of the settlement. This is spelled out in the settlement agreement as the Defendant, Shirley Bochkay, having an annual salary of twenty thousand eight hundred dollars ($20,800.00) and the Debtor/Plaintiff, Wally Bochkay, receiving unemployment compensation in the amount of two hundred thirty dollars ($230.00) per month by reason of his resignation in lieu of termination from a well paying job. The value of assets received by each spouse at the time of the divorce decree/settlement agreement could not be ascertained from the record.

The third indicator is the *actual* function served by the payment of the second mortgage by the Debtor. This Court finds as a fact that the payments made by the Debtor on the second mortgage, which presumably were primarily interest only with minimal reduction of principle, served to provide continued shelter to the Debtor's ex-spouse and their son.

Accordingly, we conclude that our finding of the intended function of providing shelter to the minor child is supported by the fact that it was the actual function served by this debt obligation.

■ Additionally, Debtor's counsel raises the issue that this divorce was under Ohio law and the law of that circuit is stated in *In re Calhoun*, 715 F.2d 1103 (1983). Calhoun requires that the Court look at the parties *present* financial conditions to determine whether the obligation is currently necessary for maintenance or support. Id. at 1109. We must reject the Debtor's attempt to suggest that the law of the 6th Circuit applies.

> ... whether the obligation is in the nature of alimony, maintenance, or support for the purposes of the bankruptcy code is a question of Federal, not state, law. *In re Gianakas*, 759 at Page 762.

The fact that our Circuit disagrees with the 6th Circuit will hopefully be reconciled in the near future. Nevertheless, since the relevant issue is a question of Federal law, this Court is bound by its Circuits' interpretation of that Federal law.

Unlike Bochkay, the Debtor, Mr. Pollock, declined to testify. Accordingly, we have no direct testimony from him with regard to his intent as to the obligations he agreed to on August 15, 1989.

■ Of course, Mrs. Pollock has the burden of proof by a preponderance of the evidence with regard to non-dischargeability. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). She attempted to meet that burden by introducing the separation and property settlement agreement and two subsequent orders relative thereto. Further, Mrs. Pollock offered testimony with regard to the obligation.

■ Mrs. Pollock's testimony with regard to the "intended function" of the obligation to her to pay medical insurance, medical expenses, and "one-third of his earned net income" as alimony was quite sufficient for this Court to conclude that the intended function of those obligations was certainly in the nature of alimony, maintenance and support.

■ That leaves at issue, however, the more significant question as to whether the one hundred and fifteen thousand dollar ($115,000.00) obligation was property set-

tlement and therefore dischargeable or in the nature of alimony, maintenance and support and therefore not dischargeable. In order to determine that, this Court must place significant reliance on the three indicators espoused by the *Gianakas* Court.

The first indicator is: The language and substance of the agreement in the context of surrounding circumstances. We can make no mistake. The language of the separation and property settlement agreement is clear. Part IV is entitled. "Equitable distribution". Within the language of the section is the following provision:

Husband agrees to pay wife, in return for wife giving up all her right, title, and interest in the above described properties, the sum of one hundred fifteen thousand dollars ($115,000.00) in full and final relief of all property claimed she has other than as may be hereinafter noted in this agreement.... in exchange for receiving the payment of one hundred fifteen thousand dollars ($115,-000.00), wife shall, upon the date of the tender of the sum of one hundred fifteen thousand dollars ($115,000.00), execute deeds to all real estate owned by the parties upon presentation of those deeds to wife by husband.

The agreement goes on to characterize "Alimony" under Part VII. It provides, inter alia, that husband shall pay one third of his net earned income to wife for a period of three years etc. and he shall maintain Blue Cross/Blue Shield Major Medical coverage for wife until his retirement.

The agreement further contains a section identified as "Support" under VIII which is sufficiently critical to our analysis to be set forth in total:

## VIII. SUPPORT

There is a pending support action brought by Wife against Husband in the Court of Common Pleas of Carbon County and indexed to 342 DR 87. Husband, shall, as of the date that the parties conclude the settlement described herein, by tender of the money and tender of the Deeds, pay and/or deliver proof of payment of all sums due or owing under the Support Order entered in that case. At that time, Wife shall discontinue that support action. Husband has further agreed to withdraw a pending Petition for Modification of that Support Order and has already done so.

*Gianakas* emphasizes that the Court must look beyond the label attached to an obligation by a settlement agreement to examine its true nature. (Citations omitted). As the Court noted in *In re Yeates*, (Citation omitted) "A debt could be in the nature of support under § 523(a)(5) even though it would not legally qualify as alimony or support under state law". *In re Gianakas*, 917 F.2d at 762.

The only extrinsic evidence offered with regard to the "context of surrounding circumstances" was the testimony of Gail Pollock and her domestic counsel David Shulman, Esquire. Mrs. Pollock's testimony was sketchy at best and can be summarized as follows: In August of 1989, Mrs. Pollock was divorced from her husband after thirty years. During the marriage she worked in a factory that was "their business" and then worked in a bakery. At the time of the divorce, Mrs. Pollock had a high school education. She owned no substantial assets except her marital interest in two pieces of real estate which was the subject matter of the one hundred fifteen thousand dollar ($115,000.00) obligation. Mrs. Pollock testified as follows:

"Q. Now, Mrs. Pollock, did you compromise any of your support payments in order to receive the one hundred fifteen thousand dollar ($115,000.00) payment from your husband?

"A. Yes, I did."

Leading questions directed thereafter were objected to, which objections were sustained.

Mrs. Pollock further testified that she did not receive the alimony that she was entitled to under the separation agreement (Transcript Page 17). She further testified that only some of the Blue Cross and Blue Shield obligation was paid. (Transcript Page 19). Mrs. Pollock further testified that her husband lived in the marital resi-

dence and their daughter lived at the second parcel of real estate known as "Graden Huetten".

On cross examination it was brought out that the separation agreement specifically provided that "in no event, however, shall husband's alimony to wife ever exceed one third of husband's net earned income, regardless of the wife's unreimbursed medical and/or pharmaceutical bills which are not covered under any applicable insurance policy".

Also testifying for Mrs. Pollock was her domestic counsel, David Schulman, Esquire, who testified that Mrs. Pollock was suffering from medical problems having to do with her heart; that she had no visible means of support; and part of her game plan was going back to school and reeducating herself. (Transcript Page 38).

Mr. Schulman further testified:

... you have to remember that the one hundred fifteen thousand dollars ($115,-000.00) was not a percentage strictly of the value of real estate. It went to the overall give and take of the entire agreement and wasn't part and parcel of the entire package. It wasn't a separate issue that you allocate separately. The real estate was not valued at two hundred thirty thousand dollars ($230,000.00) that she was given after of (sic) the value of the real estate.

That's not how this was developed or was the intent from the agreement. So that money, as I view it, was part of the money that she was going to utilize for her support and maintenance during the time that she was continuing her education. (Transcript Pages 40–41).

With regard to the first indicator therefore, the agreement, Mrs. Pollock's testimony and Mr. Schulman's testimony all seem to establish that the one hundred fifteen thousand dollar ($115,000.00) payment was in consideration of the release of two parcels of real estate and was clearly offered in lieu of further support litigation.

The second indicator is the parties financial circumstances at the time of the settlement. Frankly, this Court has received no evidence as to Mr. Pollock's financial circumstances at the time of the separation

agreement. He did not testify and no evidence was offered except to indicate that the Pollock's were joint owners of two parcels of real estate. Accordingly, I have no way of comparing the parties relative financial strength. We do note, however, that there were no minor children at the time of the settlement agreement.

The third indicator is the actual function served by the obligation incurred at the time of the settlement. We have concluded that the Blue Cross/Blue Shield medical insurance payment represents a non-dischargeable obligation. We have no evidence that any other payments were made by Mr. Pollock to Mrs. Pollock and therefore the payments could not have maintained daily necessities because they were never, in fact, received by the Plaintiff.

This is a "close case". Nevertheless, the first indicator, as discussed, leads to our conclusion that the Plaintiff has in fact met her burden of establishing that the one hundred fifteen thousand dollar ($115,-000.00) obligation was a payment in the nature of alimony, maintenance, and support.

This Court makes no determination as to the impact of subsequent County Court proceedings occurring after the settlement agreement of August 15, 1989 was reached. Rather, this Court makes a finding that cause exists to lift the automatic stay to allow the Movant/Plaintiff, Gail Pollock, to proceed in state court to exercise her state law remedies with regard to these non-dischargeable debts. Having granted relief, the Court sees no need to act on Plaintiff/Debtor's motion for abstention.

Moreover, this Court will not order the turnover of any funds to the Plaintiff, Gail Pollock, since the Plaintiff/Movant was not shown any grounds to conclude that these non-dischargeable obligations should interfere with the rights of a Chapter 7 Trustee to administer any assets available, in accordance with the United States Bankruptcy Code.