In re David J. HAZELTON, Debtor.

Karen M. Hazelton, Plaintiff,

v.

David J. Hazelton, Defendant.

Bankruptcy No. 5–01–04557.
Adversary No. 5–02–00035A.

United States Bankruptcy Court,
M.D. Pennsylvania.

Aug. 1, 2003.

William Knecht, Esq., for Plaintiff.

Priscilla Walrath, Esq., for Debtor/Defendant.

### *OPINION*[1]

JOHN J. THOMAS, Chief Judge.

Plaintiff, Karen Hazelton, argues before this Court that certain obligations imposed on Debtor, David Hazelton, in connection with a divorce proceeding should be excepted from discharge based on subsection 523(a)(15) of the Bankruptcy Code ("Code"). A trial was held on September 18, 2002 and post-trial briefs were submitted by the parties. For the reasons stated below, the Court rules that the obligations are not excepted from discharge.

### FACTS

Plaintiff and Debtor were divorced on September 21, 2000. At the time of trial, Plaintiff was 53 years old, single and unemployed. Although she received an associates degree in business management in May 2002, she was unable to obtain employment based on the existing job market. Her only sources of income are $173.34 a month in alimony and $301.00 a month in rental assistance from HUD. Plaintiff's alimony will terminate in August 2006. Debtor is 49 years old, married and living with his new wife and two stepchildren. He was employed with the Pennsylvania's Department of Transportation ("Penn DOT") at the time of trial. He has had a number of surgeries on his knees since the parties separated. His new wife does not work due to the health problems of one of the children. Debtor testified that his spouse receives an amount somewhat less than the $864.00 a month in child support set forth on income exhibits.

While married, the parties operated a dairy farm partnership, Middleridge Farms, along with a potato farm. Middleridge Farms was originally owned by Debtor and his father, James R. Hazelton. On April 1, 1994, James withdrew from Middleridge Farms in favor of Karen. David and Karen executed a note for $97,592.00 in favor of Debtor's parents for their interest in Middleridge Farms which included the cattle and equipment. A real estate partnership, identified as Hazelton Family Partnership, was also created at the same time in the names of Debtor, Plaintiff and Debtor's parents. This part-

---

1. Drafted with the assistance of Wendy E. Morris, Law Clerk.

nership owned the real property that Middleridge Farms used. Later, on January 27, 1998, while represented by an attorney, Debtor's parents recorded the judgment for $97,592.00 in state court against both Debtor and Plaintiff. Neither party provided testimony concerning the current balance on the loan.

A number of court orders were entered in the divorce proceedings dealing with the partnerships. A order was entered on March 25, 1998 requiring Plaintiff to co-sign on a $35,000.00 operating loan for the farm in exchange for a $75.00 weekly payment from the farm partnership, presumably, Middleridge Farms. This order also stated that the "farm/partnership will continue to pay all other operating expenses relating to the farm including the two mortgages, insurance for health and car, utilities, and real estate taxes." Plaintiff filed a separate cause of action against Middleridge Farms, sometime during the divorce proceeding, and obtained two contempt orders against the farm for failure to maintain the weekly payments. An April 21, 1999 contempt order for $1,575.00 ($75.00 × 21 weeks) in back payments is still unpaid.

The state court also entered orders on June 3 and July 23, 1998 directing the sale of all marital real estate, real estate held by the "Hazelton Farm partnership"[2], and Middleridge Farms' assets. These sales occurred in 1998, 1999, and 2000. The proceeds went to the partnerships' creditors except $130,000.00 which went to Debtor's parents for their one-half (1/2) property interest in the Hazelton Family Partnership as well as payment toward the judgment lien.

The parties filed separate tax returns for the 1998, 1999, and 2000 tax periods and incurred substantial tax liabilities as a result of assessed capital gains taxes. Plaintiff owed the Internal Revenue Service ("IRS") $18,931.19 for the 1998 and 1999 tax periods. She also owed $5,076.77 to Pennsylvania's Department of Revenue for the 1998, 1999, and 2000 tax periods. Debtor's IRS tax returns for 1998, 1999, and 2000 show a $23,483.00 tax liability. Debtor did not remember how much he still owed at the time of trial but stated that he pays each taxing authority $100.00 a month pursuant to a 1999 agreement.

An equitable distribution order was eventually entered on June 8, 2001 awarding Plaintiff a jet-ski, trailer, and one-half (1/2) of the insurance policies. Debtor was also required to hold Plaintiff harmless on the promissory note to his parents and any taxes and judgments arising from the farming operation. A separate order entered that same day awarded Plaintiff $173.34 per month in alimony and required Debtor to pay all court costs.

Plaintiff is seeking a determination from this Court that Debtor's obligations to her to: (1) pay $1,575.00 ($75.00 × 21 weeks) pursuant to a contempt order in addition to $75.00 a week; (2) provide health insurance; (3) relinquish legal title in the jet ski and trailer; (4) hold harmless for (a) the promissory note to Debtor's parents, (b) taxes and (c) judgments arising out of the farming operation; and (5) pay court costs, are excepted from discharge under either subsection 523(a)(5) or 523(a)(15) of the Code.

### DISCUSSION

 Obligations to a former spouse, imposed in connection with separation or divorce proceedings, might be discharged unless prohibited by either subsection 523(a)(5) or 523(a)(15) of the Code. *See* 11 U.S.C. §§ 523(a)(5), (15). A complaint

---

**2.** Presumably, the county court intended to refer to the Hazelton *Family* Partnership.

based on either exception must be proven generally by the creditor by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 288, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Application of a subsection 523(a) discharge exception hinges on a finding, under applicable law, that the obligations at issue are personal debts of Debtor.

## Is it a Debt?

■ The Code defines a debt as a "liability on a claim" and a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. §§ 101(12), & (5). The Supreme Court defines a right to payment as "nothing more nor less than an enforceable obligation." *See Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 559, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990); *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Whether the obligations are debts, enforceable against Debtor, requires an examination of Pennsylvania law to measure

their validity. *See Grogan,* 498 U.S. at 283, 111 S.Ct. 654; *Avellino & Bienes v. M. Frenville, Co. Inc. (In re M. Frenville Co. Inc.),* 744 F.2d 332, 337 (3d Cir.1984).

Section 3502(e)(9) of Pennsylvania's Divorce Code allows former spouses to enforce obligations imposed by court order during divorce proceedings through court imposed remedies.[3] An obligation to a former spouse issued under court order is enforceable against a debtor. The effect in the realm of a bankruptcy case is the creation of a liability against a debtor to comply with the order's provisions. Like all debts, this liability runs from the debtor to the creditor, who happens to be the former spouse. The individual obligations at issue need to rise to the level of a debt for the purposes of determining nondischargeability.

## 1. MIDDLERIDGE FARMS'S OBLIGATION

■ Debtor maintains that he was not ordered by the state court to pay Plaintiff $75.00 a week or supply her with health insurance. After reviewing the various orders admitted into evidence, the only document citing a weekly payment and health insurance obligation is the March 25, 1998 order. The order's caption reads *"David Hazelton v. Karen Hazelton."* The rele-

---

3. 23 Pa. Cons.Stat. § 3502(e), provides:

(e) **Powers of the court.**-If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
(1) enter judgment;
(2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;
(3) award interest on unpaid installments;

(4) order and direct the transfer or sale of any property required in order to comply with the court order;
(5) require security to insure future payments in compliance with the court's order;
(6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order including but not limited to commitment of the person to the county jail for a period not to exceed six months;
(7) award counsel fees and costs;
(8) attach wages; or
(9) find the party in contempt.

vant language provides that "the farm partnership will pay to Karen Hazelton the sum of $75.00 per week cash." *See* Plaintiff's Exhibit No. A–1. It continues in the second paragraph with "the farm/partnership will continue to pay all operating expenses relating to the farm including the two mortgages, insurance for health and car, utilities, and real estate taxes." *Id.* The order continues with a list of various provisions directed at either "the parties", "wife", or "Karen Hazelton." *Id.*

The language in the March 25, 1998 order is neither ambiguous nor susceptible to more than one interpretation. It is clear from the plain meaning of the order that the court sought to bind Middleridge Farms partnership with the obligations in question—not specifically the Debtor. If the state court wanted to personally hold Debtor liable for these obligations, it could have easily listed him as the obligor. The state court obviously did not have a problem differentiating between the parties' identities when it used terms such as "wife", "parties", and "Karen Hazelton" throughout the order. Plaintiff does not hold an enforceable claim against Debtor for the satisfaction of the partnership's liabilities.

**2. Jet Ski and Trailer**

■ Plaintiff also seeks a determination that Debtor's obligation to transfer the titles in the jet ski and trailer to her are nondischargeable. Unlike debts, obligations to transfer property interests are not eligible for discharge and not governed by subsection 523(a). *See Bennett v. Bennett (In re Bennett)*, 175 B.R. 181, 184 (Bankr.E.D.Pa.1994) (citations omitted). An obligation to transfer one's legal interest in property is not the same as an obligation to pay a debt. The extent and validity of property rights are measured under state law and the mere filing of a bankruptcy petition will not disturb what has been decreed by the state. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Roberge v. Roberge (In re Roberge)*, 188 B.R. 366, 369 (E.D.Va.1995). In this case, a state court re-allocated Debtor's legal and equitable rights in the jet ski and trailer to Plaintiff by court order. These rights vested once the order was entered and are enforceable against Debtor in state court. *See e.g. Brugger v. Brugger (In re Brugger)*, 254 B.R. 321 (Bankr.M.D.Pa.2000); *Scholl v. Scholl (In re Scholl)*, 234 B.R. 636 (Bankr.E.D.Pa.1999). The order created an obligation to transfer a property interest—not pay a debt. Subsections 523(a)(5) and (a)(15) are inapplicable to this obligation.

**3. Debtor's Obligation to Hold Plaintiff Harmless & Pay Court Costs**

■ Plaintiff argues that her outstanding tax liabilities, the judgment lien from Debtor's parents, and the state court costs are debts Debtor is obligated to hold her harmless on under a June 8, 2001 court order. As stated above, section 3502(e)(9) of Pennsylvania's Divorce Code can create liabilities against former spouses to comply with various provisions delineated in court orders. In the context of this case, the obligations imposed on Debtor to pay certain debts are enforceable under state law and considered to be his personal debts for the purposes of determining nondischargeability under subsections 523(a)(5) and 523(a)(15).

**Subsection 523(A)(5)**

Subsection 523(a)(5) provides, in relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, in determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—...

(B) such debt includes a liability designated as alimony, maintenance, or support unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5).

■ Federal standards, not state law, are used when determining whether a debt is in the nature of either alimony, maintenance or support. *See Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 762 (3d Cir.1990). "[A] debt could be in the 'nature of support' under 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 878 (10th Cir.1986). The court must decide whether the obligations to hold Plaintiff harmless on certain debts and pay court courts are a form of alimony, maintenance or support. The true nature of these obligations is best determined by examining the state court's intent at the time the orders were entered. *See Doloff v. Doloff (In re Doloff)*, 1996 WL 31856, *2 (Bankr.M.D.Pa. Jan. 16, 1996).

■ The Third Circuit stated in *Gianakas* that this intent it measured by considering: (1) the language and substance of the settlement in the context of surrounding circumstances, using extrinsic evidence if necessary; (2) the parties' financial circumstances at the time of the settlement; and (3) the function served by the obligation at the time of the divorce.

*See* 917 F.2d at 762–63. Since Debtor has not paid any money toward the obligations, the Court will rely on the intended function to be served as outlined in *Pollock*. *See Pollock v. Pollock (In re Pollock)*, 150 B.R. 584, 588 (Bankr.M.D.Pa. 1992).

■ Although this Court has not been made aware of the existence of any state court opinion concerning the divorce proceedings, my review of the various court orders, along with the Master's Report, leads me to conclude that the hold harmless obligation and the responsibility to pay court costs is not in the nature of either alimony, maintenance or support.

According to one of the June 8, 2001 orders, Plaintiff was awarded alimony of $173.34 per month for 72 months, in addition to receiving half the value of the insurance policies ($8,796.67), a jet ski and trailer. *See* Plaintiff's Exhibit Nos. C, D & G. The parties' financial condition when the orders were entered was not much different than it is now. The Master's Report does not address Plaintiff's income but mentions that she had completed some college courses and spent the duration of the marriage as a stay at home mother while doing retail work or sewing part-time. *See* Plaintiff's Exhibit No. E. The report also mentions that Debtor was working for his current employer, the Pennsylvania Department of Transportation. *Id.* The evidence strongly suggests that the intended function of imposing these obligations on Debtor was to help Plaintiff begin her unmarried life without financial constraints from a business in which she was not an active participant. Debtor's obligations to Plaintiff to satisfy third party debts associated with the farming operation and pay court costs were not an additional component of the alimony already awarded to Plaintiff. These debts

are not excepted from discharge under subsection 523(a)(5).

### SUBSECTION 523(A)(15)

Prior to the adoption of subsection 523(a)(15), debtors were able to discharge property settlement debts incurred during separation or divorce proceedings if they were not in the nature of alimony, maintenance or support under subsection 523(a)(5). *See* 11 U.S.C. § 523(a)(5). Congress passed subsection 523(a)(15) to substantially limit the ability of debtor to discharge obligations owed to former spouses after realizing that debtors were discharging debts they had originally agreed to pay in exchange for a reduction in support payments or in lieu of paying support. *See* H.R.Rep. No. 103–835, at 54 (1994), U.S.Code Cong. & Admin.News 1994, p. 3340. Subsection 523(a)(15) provides:

(a) A discharge under 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court or record, a determination made in accordance with State or territorial law by a governmental unit unless-

(A) the debtor does not have the ability to pay such debt for income or property of the debtor not reasonably necessary to be expended from the maintenance or support of the debtor or a dependent of the debtor ...; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental conse-

quences to a spouse, former spouse, or child of the debtor;

11 U.S.C. § 523(a)(15).

 Subsections 523(a)(15)(A) and (B) afford Debtor the opportunity to discharge these debts. *See Shellem v. Koons (In re Koons)*, 206 B.R. 768, 773 (Bankr.E.D.Pa.1997)(citing *Stone v. Stone (In re Stone)*, 199 B.R. 753 (Bankr. N.D.Ala.1996)). Subsection 523(a)(15)(A) is commonly referred to as the "ability to pay" test, whereas subsection 523(a)(15)(B) is the "totality of the circumstances" test. Because both tests are written in the disjunctive, Debtor only needs to satisfy his burden by a preponderance of the evidence under either test. *See Grogan*, 498 U.S. at 288, 111 S.Ct. 654; *Bubp v. Romer (In re Romer)*, 254 B.R. 207, 212 (Bankr. N.D.Ohio 2000). Doing so shifts the burden back to Plaintiff to prove otherwise. *See Colangelo v. Colangelo (In re Colangelo)*, 206 B.R. 78, 84 (Bankr.M.D.Pa.1996).

 Since this Court has already found that the debts at issue are not excepted from discharge under subsection 523(a)(5), Plaintiff only has to prove that Debtor "incurred" them in the course of their divorce. The Code unfortunately fails to define "incurred." Any assistance from the legislative history is clouded, at best. *See* H.R.Rep. No. 103–835 (1994). Relevant non-bankruptcy law determines whether, based on the plain meaning of the term, a debtor "incurred" a debt. *See e.g. Gibson v. Gibson (In re Gibson)*, 219 B.R. 195 (6th Cir. BAP 1998); *Coats v. Coats (In re Coats)*, 2002 WL 31086072 (Bankr. M.D.N.C. Sept. 18 2002); *Crawford v. Osborne (In re Osborne)*, 262 B.R. 435 (Bankr.E.D.Tenn.2001); *Salerno v. Crawford (In re Crawford)*, 236 B.R. 673 (Bankr.E.D.Ark.1999); *Turner v. McClain (In re McClain)*, 227 B.R. 881 (Bankr. S.D.Ind.1998); *Carlisle v. Carlisle (In re Carlisle)*, 205 B.R. 812 (Bankr.W.D.La.

1997); *Schmitt v. Eubanks (In re Schmitt)*, 197 B.R. 312 (Bankr.W.D.Ark. 1996); *Johnston v. Henson (In re Henson)*, 197 B.R. 299 (Bankr.E.D.Ark.1996).[4]

■■■■ It is well established that, absent an overriding federal provision, both the creation and enforceability of obligations imposed in connection with orders entered in divorce proceedings are governed by state law. *See Grogan*, 498 U.S. at 283–84, 111 S.Ct. 654. Pennsylvania law gives Plaintiff the right to enforce Debtor's compliance with the orders entered against him during their divorce proceeding. *See* 23 Pa. Const. Stat. § 3502(e). Despite the fact that part of the obligation at issue is couched in "hold harmless" language, this statutory right imposes an implied obligation on Debtor to hold Plaintiff harmless from future liability to the IRS, Pennsylvania Department of Revenue, and Debtor's parents, in addition to paying court costs, whether or not specific indemnification language is present. This right, coupled with an entered order, creates a new liability running from Debtor to Plaintiff which was not in existence prior to the commencement of the divorce proceeding. The Court is convinced that

Debtor incurred these debts during his divorce.

■■■■ The burden now shifts to Debtor to prove that he either does not have the ability to pay the debt or that the benefit of a discharge outweighs any detriment Plaintiff might experience as a result. *See* 11 U.S.C. §§ 523(a)(15)(A) & (B). Subsection 523(a)(15)(A), or the "ability to pay" test, forces the court to "engage in the unenviable task of scrutinizing [Debtor's] schedule of income and expenditures." *In re Johnson*, 241 B.R. 394, 398 (Bankr.E.D.Tex.1999). Whether Debtor possesses the resources necessary to pay the debt, is a question of fact. *See Bolger v. Bolger (In re Bolger)*, 1998 WL 351032, *4 (Bankr.N.D. Ill. June 18, 1998). Similar to the "disposable income" analysis performed when confirming Chapter 13 cases, the "ability to pay" test requires a finding that Debtor's expenses are reasonably necessary for the maintenance or support of himself and his dependents.[5]

■■■■ While courts disagree on the point in time a debtor's ability to pay should be measured, in the absence of statutory

4. As expected, courts are divided over what "incurred" means. There is a line of cases relying on the subsection's legislative history to conclude that a debtor only incurs a "new" debt if he has agreed to either indemnify or hold his former spouse harmless. *See e.g. Burton v. Burton (In re Burton)*, 242 B.R. 674 (Bankr.W.D. Mo.1999); *Salyers v. Richardson (In re Richardson)*, 212 B.R. 842 (Bankr. E.D.Ky.1997); *Owens v. Owens (In re Owens)*, 191 B.R. 669 (Bankr.E.D.Ky.1996); *Stegall v. Stegall (In re Stegall)*, 188 B.R. 597 (Bankr. W.D.Mo.1995). Such a restricted analysis can create detrimental results for the subsection's intended beneficiary—the aggrieved former spouse. *See generally Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)(discussion on statutory interpretation).

5. Section 1325(b) provides, in pertinent part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan

(2) for purposes of this section disposable income means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor . . .

guidance, this Court will measure Debtor's ability to pay as of the trial date. *Mannix v. Mannix (In re Mannix)*, 303 B.R. 587, 597 (Bankr.M.D.Pa.2003).

 The Code's provisions also fail to state whether the financial situation of adults living with the parties can be considered under the "ability to pay" test. This Court will follow the reasoning of other courts that conclude that its inclusion is necessary to the analysis. *See e.g. In re Osborne*, 262 B.R. 435 (Bankr. E.D.Tenn.2001); *Foto v. Foto (In re Foto)*, 258 B.R. 567 (Bankr.S.D.N.Y.2000); *In re Koons*, 206 B.R. 768, 773 (Bankr.E.D.Pa. 1997); *cf Gantz v. Gantz (In re Gantz)*, 192 B.R. 932, 937 (Bankr.N.D.Ill.1996)(holding that a new spouse's income is not considered under the "ability to pay" test). A look at the complete economic circumstances of Debtor's household is necessary to determine whether he possesses income not reasonably necessary for the support of himself and his dependents.

With regard to what expenses are considered "reasonably necessary," I am inclined to follow my position in *In re Zaleta*, 211 B.R. 178 (Bankr.M.D.Pa.1997), and review the reasonableness of expenses in light of a debtor's surrounding circumstances. *Mannix, supra,* at 597–98.

 If this Court finds that Debtor possesses either income or property not reasonably necessary to support himself or his dependents, the question of whether this Court can partially discharge the debts becomes an issue. For reasons set forth in *Mannix, supra,* at 598, this Court will consider the individual obligations as either entirely dischargeable or not dischargeable.

 Concerning Debtor's ability to pay, the Court finds that he does not possess the ability to pay any of the debts. Debtor's budget shows a monthly deficit of $195.58. *See* Defendant's Exhibit Nos. 7A & 7B. Even if his $91.24 monthly retirement deduction is added back into his disposable income and a modification is made to his $600.00 food expense, it would not positively affect his disposable income. *See* Defendant's Exhibit No. 7A.

Based on a review of Debtor's expenses and the monetary amount of each obligation, the Court finds that Debtor does not possess the ability to pay any of these debts and they are not excepted from discharge under subsection 523(a)(15). Since Debtor has met his burden under subsection 523(a)(15)(A), the Court finds it unnecessary to review the evidence under subsection 523(a)(15)(B).

An Order will follow.

### *ORDER*

For those reasons indicated in the Opinion filed this date, **IT IS HEREBY**

**ORDERED** that judgment is entered in favor of the Defendant, David J. Hazelton, and against Plaintiff, Karen M. Hazelton. The debt at issue is not excepted from Defendant's discharge order under 11 U.S.C. § 523(a)(15).